IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**WHITE HALL ON MS RIVER, LLC**                                          **PLAINTIFF**

**VS.**                              **CIVIL ACTION NO: 5:13-cv-218-DCB-MTP**

**HARTFORD INSURANCE COMPANY OF THE MIDWEST**                      **DEFENDANT**

<u>**ORDER DENYING SUMMARY JUDGMENT**</u>

This cause is before the Court on Defendant's, Hartford Insurance Company of the Midwest, Motion for Summary Judgment **[docket entry no. 17]**. Having reviewed the motion and response, applicable statutory and case law, and being otherwise fully informed in the premises, the Court finds as follows:

I. Factual and Procedural Background

Plaintiff White Hall on MS River, LLC ("White Hall") owns and operates a hunting club on land in Claiborne County, Mississippi. In early May of 2011, the Mississippi River flooded and damaged three buildings—hunting camps—on White Hall's property. Defendant Hartford Insurance Company of the Midwest ("Hartford") insured White Hall's property, including all three hunting camps, as part of the National Flood Insurance Program ("NFIP"). Hartford is a Write-Your-Own program carrier participating in the NFIP. After the flooding, Hartford paid in full on White Hall's primary coverage for the loss of the hunting camps. Hartford, however, denied White

1

Hall's claims for increased cost of compliance ("ICC") coverage.

After the damage, White Hall sought to rebuild. On August 1, 2011, the Claiborne County Department of Administration and Planning ("DAP") inspected the property, and two days later, issued a Floodplain Development Permit. Thereafter, White Hall began reconstruction. On April 19, 2012, White Hall received a Letter of Compliance from DAP. As early as May 9, 2012, White Hall requested a Substantial Damage Letter from Claiborne County. The Letter was originally issued and dated June 11, 2012, but White Hall requested that the County backdate the Letter, which it did. On October 12, 2012, Hartford denied White Hall's ICC claims because "the demolition and elevation of the new structure were completed prior to Claiborne County issuing the substantial damage letter." State Court Record 15, ECF No. 2. White Hall appealed the denial to the Federal Emergency Management Agency ("FEMA"), and on April 13, 2013, FEMA affirmed the denial, discussing the Substantial Damage Letter.

On October 10, 2013, White Hall brought suit in the Circuit Court of Claiborne County, alleging claims for breach of contract, bad faith, and punitive damages. On November 7, 2013, Hartford removed the case to federal court asserting federal question jurisdiction. Discovery in this case has closed, and Hartford has moved for summary judgment on all of White Hall's claims.

II. Analysis

2

## A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted). The moving party bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. V. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the non-moving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must meet his burden with more than metaphysical doubt, conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d

1069, 1075 (5th Cir. 1994). A party asserting that a fact is "genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Hartford gives four reasons why White Hall is not entitled to coverage: (1) it did not receive a substantial damage letter before repairing the damage to the hunting camps, (2) it did not comply with information requests from Hartford, (3) it built the new structures exceeding the minimum requirements, and (4) it never submitted a proof of loss to Hartford or FEMA. All of Hartford's reasons relate to White Hall's failure to comply with procedure related to NFIP ICC claims.

### B. Late Substantial Damage Letter

The main point of contention between the parties concerns the Substantial Damage Letter. Hartford contends that the Substantial Damage Letter must be obtained before any construction can begin on a damaged property in order to received increased cost of compliance coverage. Mem. Supp. 12, ECF No. 18. White Hall admits

4

that the Letter "was dated after the demolition and elevation of the new structure" but counters that there is no statutory requirement to obtain a Substantial Damage Letter prior to repairing its damaged property. Mem. Opp. 2, 7, ECF No. 21. In its reply brief, White Hall urges that this requirement comes from the NFIP Adjuster Claims Manual and that this manual has been incorporated by reference into the regulations governing flood insurance claims. Reply 5, ECF No. 22.

A Substantial Damage Letter certifies that the property has been damaged to exceed fifty percent of its market value in the community. Mot. Summ. J. Ex. D. ("Claims Manual") 2, ECF No. 17-4. "An ICC claim must not be opened until the local official has declared in writing that the structure has been substantially damaged specifically by flood." Claims Manual 2. "The FEMA Claims Manual . . . is incorporated by reference into the FEMA regulations." Suopys v. Omaha Prop. & Cas., 404 F.3d 805, 811 (3rd Cir. 2005) (citing 44 C.F.R. § 62.23). Regulations issued by FEMA, along with the National Flood Insurance Act and federal common law, exclusively govern the NFIP policies and any disputes that may arise. 44 C.F.R. Pt. 61, App. A(2), Art. IX (2011) (the Standard Flood Insurance Policy); see also Worthen v. Fidelity Nat'l Prop. & Cas. Ins. Co., 463 F. App'x 422, 426 (5th Cir. 2012) (interpreting identical language in Appendix 1 of 44 C.F.R. Pt. 61 to mean that FEMA regulations govern the policy and any disputes

5

over coverage). Because the NFIP Adjuster Claims Manual is binding on White Hall by regulation, the Court finds that it was required to obtain a Substantial Damage Letter prior to rebuilding the hunting camps to qualify for ICC coverage. However, White Hall argues that the date on the original letter was incorrect, and resulted through no fault of its own. Further, a Federal Emergency Management Agency ("FEMA") representative and the then administrator for Claiborne County acknowledge that this date was incorrect. The FEMA representative requested Claiborne County reissue the letter to reflect the date of the property visit. Because of this question related to when the Substantial Damage Letter was received and when Claiborne County had determined that issuing the Letter was proper, the Court will deny summary judgment based on this argument.

### C. Failure to Comply with Information Requests and Exceeding Minimum Requirements

Hartford next argues that White Hall did not comply with two requests for information from Hartford during the evaluation of White Hall's ICC claims and that White Hall rebuilt the hunting camps in excess of the minimum requirements at additional cost. Mem. Supp. 16-18. White Hall primarily argues that Hartford should be estopped from asserting these or any ground other than the Substantial Damage Letter as a defense of its denial of coverage because only the Substantial Damage Letter was mentioned in the denial letter from Hartford. Mem. Opp. 5. White Hall secondarily

6

argues that the itemized cost estimates are "not required by any statute, Federal Regulations, or FEMA claim regulation." Mem. Opp. 8. In its reply, Hartford argues the inapplicability of estoppel. Reply 4-9.

The Fifth Circuit has rejected claims of estoppel as applied to NFIP carriers because they "essentially assert[] an estoppel claim against the government, and we have never upheld such claims in the context of the NFIP." Collins v. Nat'l Flood Inc. Program, 394 F. App'x 177, 178-79 (5th Cir. 2010); see also Gowland v. Aetna, 143 F.3d 951, 955 (5th Cir. 1998) ("[P]ayments made pursuant to [an NFIP] policy are a direct charge on the public treasury. When federal funds are involved, the judiciary is powerless to uphold a claim of estoppel . . . ."). Therefore, Hartford is not estopped from arguing grounds for denial that were not asserted in its original denial letter.

Having found that Hartford is not estopped from asserting these arguments in favor of denial, the Court notes that Hartford has not cited to any supporting regulation or statute for either argument. Hartford instead merely points to a letter from its adjuster stating that the cost estimates are required "to determine if [White Hall's] building meets the requirements of the [Standard Flood Insurance Plan], Endorsement Number One, Article 4 - Coverage D - Increased Cost of Compliance." Mot. Summ. J. Ex. A 109-10, ECF 17-1 (Exhibit 24 to White Hall's Deposition). White Hall never

7

addresses that the construction exceeded the minimum requirements, and Hartford does not mention it in its reply. Because Hartford has not adequately supported these arguments with citation to authority, the Court will deny summary judgment related to this reason for denial of coverage.

D. Failure to Submit Proof of Loss

Hartford finally argues that White Hall failed to submit a Proof of Loss statement "at any time prior to the filing of this lawsuit." Mem. Supp. 18. White Hall cites to two cases in the Eastern District of Louisiana for the proposition that the insurer cannot apply the proof of loss requirement in a hyper-technical way to avoid payment where it has received information sufficient to pay part of the claim already. Mem. Opp. 8 (citing Reichert v. Fidelity Nat'l Prop., No. 06-5448, 2007 WL 763706, at *2-3 (Mar. 8, 2007); Phillips v. Fed. Emergency Mgmt. Agency, No. 13-5291, 2014 WL 273144, at *3 (Jan. 24, 2014)). In its reply, Hartford argues that Fifth Circuit precedent squarely holds "that the insured's failure to timely file a [Proof of Loss statement] for additional benefits justifie[s] the denial of the insured's claim - regardless of the fact that an insurer had paid on [the] original claim without the insured having submitted a [Proof of Loss statement]." Reply 8 (citing Marseilles Homeowners' Condominium Ass'n, Inc. v. Fidelity Nat'l Ins. Co., 542 F.3d 1053, 1055-56 (5th Cir. 2008)).

"[A]n insured's failure to provide a complete, sworn proof of

8

loss statement, as required by the flood insurance policy, relieves the federal insurer's obligation to pay what otherwise might be a valid claim." Gowland, 143 F.3d at 954. This is true even where an insured argues that the insurer should be estopped from asserting the failure to provide a proof of loss statement. Id., at 955. Further, this requirement is to be strictly construed. See Marseilles, 542 F.3d at 1056.

The line of cases that White Hall cites are no longer good law. In Reichert, Judge Zainey held that an insurer could not apply the proof of loss requirement in a hyper-technical way to deny a claim "where the claim had been adjusted and partially paid and where the proof of loss requirement was raised for the first time after suit was filed." Kelly v. Hartford Fire Ins., 615 F. Supp. 2d 474, 476 (E.D. La. 2009) (citing Reichert, 2007 WL 763706, at *3). But in a later case after further development of Fifth Circuit precedent, Judge Zainey acknowledged that the Fifth Circuit has "rejected any arguments regarding *substantial* compliance with the federal regulations because *strict* compliance with a federal flood policy is required." Id. (citing Marseilles, 542 F.3d at 1056); see also Parker v. United States, No. 5:12cv11, 2013 WL 1305519, at *3 (S.D. Miss. Mar. 26, 2013) ("The Fifth Circuit has stated that [the proof of loss] requirement is 'strict' and has more than once affirmed dismissal of a plaintiff's suit to recover for loss under a [federal flood insurance policy] because the plaintiff failed to

9

comply with this requirement." (citing Marseilles) (internal citations omitted)).

Although the law is clear, the facts in this case are not. White Hall (incorrectly) argues that it did not need to submit a Proof of Loss statement in this case, but it never concedes that it in fact did not submit one. This allegation comes from Hartford. Therefore, in viewing the facts in the light most favorable to White Hall, the Court will deny summary judgment based on this argument.

### III. Order

IT IS HEREBY ORDERED that defendant's Motion for Summary Judgment is DENIED.

SO ORDERED this the 7th day of April 2015.

                                  /s/ David Bramlette
                                  UNITED STATES DISTRICT JUDGE